1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10  | HILARIO M.R.,[1]

11  |        Petitioner,

12  |     v.

13  | WARDEN, MESA VERDE DETENTION
    | CENTER,[2]

14

15  |        Respondent.

16

17

| Case No. 1:24-cv-00998-EPG-HC

ORDER SUBSTITUTING WARDEN OF
MESA VERDE DENTENTION CENTER AS
RESPONDENT AND TERMINATING
OTHER NAMED RESPONDENTS

ORDER GRANTING PETITION FOR WRIT
OF HABEAS CORPUS IN PART, DENYING
PETITIONER'S MOTION FOR
TEMPORARY RESTRAINING ORDER AS
MOOT, AND DENYING RESPONDENT'S
MOTION TO DISMISS

(ECF Nos. 2, 9)

18

19       Petitioner Hilario M.R., represented by counsel, is a federal immigration detainee

20  proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties

21  have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 7, 10, 11.) For

22

23  [1] The Court partially redacts Petitioner's name to mitigate privacy concerns, as suggested by the
Committee on Court Administration and Case Management of the Judicial Conference of the United

24  States. See Memorandum Re: Privacy Concern Regarding Social Security & Immigration Opinions (May
1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

25  [2] "[L]ongstanding practice confirms that in habeas challenges to present physical confinement—'core
challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner

26  is being held . . . ." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). The Ninth Circuit has "affirm[ed] the
application of the immediate custodian and district of confinement rules to core habeas petitions filed

27  pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." Doe v. Garland, 109 F.4th
1188, 1199 (9th Cir. 2024). Thus, the proper respondent is Petitioner's immediate custodian, the Warden

28  of the Mesa Verde Detention Center, where Petitioner is currently detained. (ECF No. 9 at 1 n.1.)

the reasons set forth herein, the petition for writ of habeas corpus is granted in part and denied in part, Petitioner's motion for temporary restraining order is denied as moot, and Respondent's motion to dismiss is denied.

## I.

## BACKGROUND

Petitioner is a native and citizen of Mexico. (ECF No. 1 at 3, 7.[3]) Petitioner entered the United States for the first time in 1992. (ECF No. 1 at 7; ECF No. 1-6.) On April 12, 2006, Petitioner was convicted of attempted kidnapping and sentenced to an imprisonment term of eighteen months. (ECF No. 1 at 7; ECF No. 14 at 3, 8.) Upon his release from prison, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") and served a final administrative removal order on February 7, 2007. (ECF No. 1 at 8; ECF No. 14 at 3, 9.) On February 8, 2007, Petitioner was removed to Mexico. (ECF No. 14 at 3, 10–11.)

Subsequently, Petitioner entered the United States without being admitted or paroled by an immigration officer. (ECF No. 14 at 3, 12–15.) On February 25, 2021, Petitioner was convicted for driving under the influence and sentenced to ten days in jail and three years of summary probation. (ECF No. 1 at 7–8; ECF No. 1-21; ECF No. 14 at 3, 13.) On August 17, 2023, Petitioner was arrested by ICE officers and served with a Notice of Intent/Decision to Reinstate Prior Order. (ECF No. 1 at 8; ECF No. 14 at 3–4, 12–16.) On October 4, 2023, Petitioner participated in a reasonable fear interview with an asylum officer ("AO"), and the AO found a reasonable fear and placed Petitioner in withholding-only proceedings[4] by issuing Form 1-863, Notice of Referral to Immigration Judge. (ECF No. 1 at 8; ECF No. 14 at 4, 17–19.)

On October 24, 2023, Petitioner filed a motion for bond hearing but subsequently withdrew the motion. (ECF No. 14 at 4, 25–115.) On January 24, 2024, Petitioner filed another motion for a bond hearing, and the immigration judge ("IJ") denied the motion, noting that

---

[3] Page numbers refer to ECF page numbers stamped at the top of the page.

[4] Withholding-only "proceedings are 'limited to a determination of whether the alien is eligible for withholding or deferral of removal,' and as such, 'all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief.'" Johnson v. Guzman Chavez, 594 U.S. 523, 531 (2021) (quoting 8 C.F.R. §§ 208.2(c)(3)(i), 1208.2(c)(3)(i)).

Petitioner "is not eligible for an Aleman[5] bond yet as he has not been detained for 180 days yet." (ECF No. 14 at 4, 116–21.) On January 31, 2024, Petitioner filed a third motion for a bond hearing. (ECF No. 14 at 4, 122–25.) The immigration court scheduled a bond hearing, but Petitioner withdrew his motion. (ECF No. 14 at 4, 126–31.) On February 2, 2024, Petitioner filed a fourth motion for bond hearing. (ECF No. 14 at 4, 132–35.) On February 15, 2024, an IJ conducted a bond hearing and denied release, finding that the Department of Homeland Security ("DHS") "met its burden to establish that [Petitioner] is a danger to the community." (ECF No. 14 at 4, 198–99.) In lieu of appealing the decision to the Board of Immigration Appeals ("BIA"), on March 21, 2024, Petitioner filed a motion for reconsideration, which was denied on April 2, 2024. (ECF No. 14 at 4, 155–76.) On June 19, 2024, Petitioner filed another motion for reconsideration, which was denied on June 28, 2024. (ECF No. 14 at 4–5, 177–97.)

Petitioner applied for withholding of removal under section 241 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231, and deferral of removal under the United Nations Convention Against Torture. (ECF No. 1 at 8.) On April 18, June 10, and July 29, 2024, hearings were held before an IJ to consider Petitioner's applications for relief. (ECF No. 14 at 5.) On July 29, 2024, the IJ denied Petitioner's applications for relief. (Id. at 20–21.) On August 5, 2024, Petitioner filed a notice of appeal with the BIA. (Id. at 5, 22–24.) On December 23, 2024, the BIA remanded the proceedings back to the IJ. (ECF No. 15 at 8; ECF No. 15-1.)

Meanwhile, on August 22, 2024, Petitioner file the instant petition for writ of habeas corpus, alleging his prolonged detention violates his Fifth and Eighth Amendment rights and requests immediate release, or in the alternative, release within thirty days unless Respondent schedules a bond hearing before an IJ. (ECF No. 1 at 19–21.) On October 25, 2024, Respondent filed a motion to dismiss. (ECF No. 9.) On December 11, 2024, the Court directed Respondent to

---

[5] Aleman Gonzalez v. Sessions, 325 F.R.D. 616 (N.D. Cal. 2018), aff'd sub nom. Aleman Gonzalez v. Barr, 955 F.3d 762 (9th Cir. 2020), rev'd and remanded sub nom. Garland v. Aleman Gonzalez, 596 U.S. 543 (2022). The district court certified a class of individuals who were subject to final removal orders and were detained pursuant to 8 U.S.C. § 1231(a)(6) and issued a preliminary injunction that "require[d] a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" where the government bore "a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." Aleman Gonzalez, 955 F.3d at 766.

1  file exhibits referenced in the declaration filed in support of the motion to dismiss but which

2  were not attached. (ECF No. 13.) On December 19, 2024, Respondent filed the exhibits. (ECF

3  No. 14.) On January 6, 2025, Petitioner filed an untimely opposition to the motion to dismiss.

4  (ECF No. 15.)

## II.

## DISCUSSION

### A.  Immigration Detention Statutes and Bond Hearings

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). Here, Petitioner is detained pursuant to 8 U.S.C. § 1231(a),[6] which provides:

> (1) Removal period
>
>> (A) In general
>>
>> Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
>>
>> (B) Beginning of period
>>
>> The removal period begins on the latest of the following:
>>
>>> (i) The date the order of removal becomes administratively final.
>>>
>>> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>>>
>>> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

---

[6] The Supreme Court has "held that § 1231(a) applies to individuals who are removed and who then reenter without authorization and apply for withholding of removal based on a fear that they will be persecuted or tortured if returned to their countries of origin." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575–76 (2022) (citing Johnson v. Guzman Chavez, 594 U. S. 523 (2021)).

(C) Suspension of period

The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

(2) Detention

(A) In general

During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.

(B) Enforcement by attorney general of a State

The attorney general of a State, or other authorized State officer, alleging a violation of the detention requirement under subparagraph (A) that harms such State or its residents shall have standing to bring an action against the Secretary of Homeland Security on behalf of such State or the residents of such State in an appropriate district court of the United States to obtain appropriate injunctive relief. The court shall advance on the docket and expedite the disposition of a civil action filed under this subparagraph to the greatest extent practicable. For purposes of this subparagraph, a State or its residents shall be considered to have been harmed if the State or its residents experience harm, including financial harm in excess of $100.

(3) Supervision after 90-day period

If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien--

(A) to appear before an immigration officer periodically for identification;

(B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;

(C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and

(D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

(4) Aliens imprisoned, arrested, or on parole, supervised release, or probation

 (A) In general

 Except as provided in section 259(a) of Title 42 and paragraph (2), the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment. Parole, supervised release, probation, or possibility of arrest or further imprisonment is not a reason to defer removal.

 (B) Exception for removal of nonviolent offenders prior to completion of sentence of imprisonment

 The Attorney General is authorized to remove an alien in accordance with applicable procedures under this chapter before the alien has completed a sentence of imprisonment--

  (i) in the case of an alien in the custody of the Attorney General, if the Attorney General determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense related to smuggling or harboring of aliens or an offense described in section 1101(a)(43)(B), (C), (E), (I), or (L) of this title[2] and (II) the removal of the alien is appropriate and in the best interest of the United States; or

  (ii) in the case of an alien in the custody of a State (or a political subdivision of a State), if the chief State official exercising authority with respect to the incarceration of the alien determines that (I) the alien is confined pursuant to a final conviction for a nonviolent offense (other than an offense described in section 1101(a)(43)(C) or (E) of this title), (II) the removal is appropriate and in the best interest of the State, and (III) submits a written request to the Attorney General that such alien be so removed.

 (C) Notice

 Any alien removed pursuant to this paragraph shall be notified of the penalties under the laws of the United States relating to the reentry of deported aliens, particularly the expanded penalties for aliens removed under subparagraph (B).

 (D) No private right

 No cause or claim may be asserted under this paragraph against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien.

(5) Reinstatement of removal orders against aliens illegally reentering

1 
2 
3 
4 

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

5 

> (6) Inadmissible or criminal aliens

6 
7 
8 
9 

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

10 8 U.S.C. § 1231(a).

11 "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,'[7] a noncitizen

12 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez,

13 596 U.S. 573, 575 (2022). "After the removal period expires, the Government 'may' detain only

14 four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2)

15 those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to

16 the community'; and (4) those it determines to be 'unlikely to comply with the order of

17 removal.'" Id. at 578–79 (quoting 8 U.S.C. § 1231(a)(6)).

18     In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to

19 prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the

20 government and all administrative and judicial review was exhausted, but their removal could

21 not be effectuated because their designated countries either refused to accept them or the United

22 States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062

23 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the

24 statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize

25 

26 
27 
28 

---

[7] "The removal period begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(1)(B)). "During the removal period, detention is mandatory." Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(2)).

1   indefinite detention and "limits an alien's post-removal-period detention to a period reasonably

2   necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at

3   689. Thus, after a presumptively reasonable detention period of six months, a noncitizen was

4   entitled to release if "it has been determined that there is no significant likelihood of removal in

5   the reasonably foreseeable future." Id. at 701.

6        In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to

7   mandatory detention under 8 U.S.C. § 1226(c). The Supreme Court upheld its "longstanding

8   view that the Government may constitutionally detain deportable aliens during the limited period

9   necessary for their removal proceedings." Id. at 526. The Supreme Court distinguished Zadvydas

10   by emphasizing that mandatory detention under § 1226(c) has "a definite termination point" and

11   "in the majority of cases it lasts for less than the 90 days . . . considered presumptively valid in

12   Zadvydas." Id. at 529. However, Justice Kennedy specifically noted that "a lawful permanent

13   resident alien such as respondent could be entitled to an individualized determination as to his

14   risk of flight and dangerousness if the continued detention became unreasonable or unjustified."

15   Demore, 538 U.S. at 532 (Kennedy, J., concurring).

16        "In a series of decisions, the [Ninth Circuit] . . . grappled in piece-meal fashion with

17   whether the various immigration detention statutes may authorize indefinite or prolonged

18   detention of detainees and, if so, may do so without providing a bond hearing." Rodriguez v.

19   Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010). In Diouf v. Napolitano (Diouf II), 634

20   F.3d 1081 (9th Cir. 2011), the Ninth Circuit applied "the canon of constitutional avoidance and

21   construe[d] § 1231(a)(6) as requiring an individualized bond hearing, before an immigration

22   judge, for aliens facing prolonged detention under that provision" and held that "[s]uch aliens are

23   entitled to release on bond unless the government establishes that the alien is a flight risk or will

24   be a danger to the community."[8] Id. at 1086.

25

26   [8] Diouf II did not explain "what procedures would apply to the bond hearings that [the Ninth Circuit] read into § . . . 1231(a)(6)." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1199 (9th Cir. 2022). The Ninth Circuit

27   "took up that question in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011)," and relying on "general principles of procedural due process," held that "the government must prove by clear and convincing

28   evidence that continued detention is justified based on the alien's flight risk or danger to the community," Rodriguez Diaz, 53 F.4th at 1199 (internal quotation mark omitted) (quoting Singh, 638 F.3d at 1200).

1    In Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060 (9th Cir. 2015), the Ninth

2    Circuit, applying the canon of constitutional avoidance, held that for noncitizens detained under

3    8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond

4    hearings every six months so that noncitizens may challenge their continued detention as 'the

5    period of . . . confinement grows.'" Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano

6    (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)). In Jennings v. Rodriguez, 583 U.S. 281 (2018),

7    the Supreme Court found the Ninth Circuit's interpretation that § 1226(c) included "an implicit

8    6–month time limit on the length of mandatory detention" fell "far short of a 'plausible statutory

9    construction,'" and held that the Ninth Circuit misapplied the constitutional avoidance canon to

10   find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in

11   which the Attorney General must prove by clear and convincing evidence that the alien's

12   continued detention is necessary." Jennings, 583 U.S. at 304, 296, 306. The case was remanded

13   to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The

14   Ninth Circuit likewise remanded the case to the district court to consider the constitutional

15   arguments in the first instance but observed that it had "grave doubts that any statute that allows

16   for arbitrary prolonged detention without any process is constitutional or that those who founded

17   our democracy precisely to protect against the arbitrary deprivation of liberty would have

18   thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

19        Following Jennings, the Ninth Circuit reexamined the applicable procedures for

20   immigration detention under 8 U.S.C. § 1231(a)(6). Although "recogniz[ing] some tension

21   between *Diouf II* and *Jennings*," the Ninth Circuit held that it "remain[ed] bound by *Diouf II*"

22   and concluded that "that the district court did not err in relying on *Diouf II*'s construction of

23   § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien

24   whose release or removal is not imminent" and "also properly required the Government to bear a

25   clear and convincing burden of proof at such a bond hearing to justify an alien's continued

26   detention." Aleman Gonzalez v. Barr, 955 F.3d 762, 766 (9th Cir. 2020). The Supreme Court

27   reversed, holding that 8 U.S.C. § 1252(f)(1) deprived the district court of jurisdiction to entertain

28   the requested class-wide injunctive relief. Garland v. Aleman Gonzalez, 596 U.S. 543, 546

1  (2022). In <u>Johnson v. Arteaga-Martinez</u>, 596 U.S. 573 (2022), "a companion case decided that

2  same day arising from the Third Circuit, . . . the Supreme Court separately rejected [the Ninth

3  Circuit's] statutory interpretation in *Aleman Gonzalez* (which was itself based on *Diouf II*)."

4  <u>Rodriguez Diaz v. Garland</u>, 53 F.4th 1189, 1201 (9th Cir. 2022). <u>Arteaga-Martinez</u> held that

5  "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to

6  provide bond hearings before immigration judges after six months of detention, with the

7  Government bearing the burden of proving by clear and convincing evidence" and declined to

8  reach the constitutional claims. 596 U.S. at 581, 583. "[A]fter the Supreme Court's decisions in

9  *Jennings* and *Arteaga-Martinez*, it remains undetermined whether the Due Process Clause

10  requires additional bond procedures under" 8 U.S.C. § 1231. <u>Rodriguez Diaz</u>, 53 F.4th at 1201.

11  **B.  Fifth Amendment**

12  Petitioner contends that "[d]etention without a bond hearing is unconstitutional when it

13  exceeds six months," and "[e]ven if a bond hearing is not required after six months in every case,

14  at a minimum, due process requires a bond hearing after detention has become unreasonably

15  prolonged." (ECF No. 1 at 12, 13.) Petitioner notes that "[c]ourts that apply a reasonableness test

16  have considered three main factors in determining whether detention is reasonable": (1) "whether

17  the noncitizen has raised a 'good faith' challenge to removal"; (2) the length of detention, "with

18  detention presumptively unreasonable if it lasts six months to a year"; and (3) "the likelihood

19  that detention will continue pending future proceedings." (<u>Id.</u> at 13–14.) Petitioner also discusses

20  the three-factor test from <u>Mathews v. Eldridge</u>, 424 U.S. 319 (1976). (ECF No. 1 at 15.)

21  Respondent argues that "there has been no violation of procedural due process," "Petitioner's

22  reliance on *Mathews v. Eldridge*, 424 U.S. 319 (1976), is misplaced," and "[e]ven if this court

23  were to consider *Mathews* in the immigration context," Petitioner would not be entitled to habeas

24  relief. (ECF No. 9 at 6.)

25  Courts in the Ninth circuit have taken a variety of approaches to determine whether due

26  process requires a bond hearing in a particular immigration detention case. <u>See, e.g.</u>, <u>Rodriguez</u>

27  <u>v. Nielsen</u>, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (applying

28  bright-line rule that "detention becomes prolonged after six months and entitles [the petitioner]

1    to a bond hearing" in § 1226(c) context); <u>Banda v. McAleenan</u>, 385 F. Supp. 3d 1099, 1117

2    (W.D. Wash. 2019) (considering six factors, which include: "(1) the total length of detention to

3    date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the

4    removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the

5    government; and (6) the likelihood that the removal proceedings will result in a final order of

6    removal" in § 1225(b) context); <u>Juarez v. Wolf</u>, No. C20-1660-RJB-MLP, 2021 WL 2323436, at

7    *4 (W.D. Wash. May 5, 2021) (considering, in addition to six factors set forth above, "whether

8    the detention will exceed the time the petitioner spent in prison for the crime that made him [or

9    her] removable" and "the nature of the crimes the petitioner committed" in § 1226(c) context),

10   <u>report and recommendation adopted</u>, 2021 WL 2322823 (W.D. Wash. June 7, 2021); <u>Lopez v.</u>

11   <u>Garland</u>, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (considering "the total length of detention to

12   date, the likely duration of future detention, and the delays in the removal proceedings caused by

13   the petitioner and the government" in § 1226(c) context).

14          There are also some courts that apply the three-part test set forth in <u>Mathews v. Eldridge</u>,

15   424 U.S. 319 (1976). <u>See</u> <u>Zagal-Alcaraz v. ICE Field Off.</u>, No. 3:19-cv-01358-SB, 2020 WL

16   1862254, at *3–4 (D. Or. Mar. 25, 2020) (collecting cases), <u>report and recommendation adopted</u>,

17   2020 WL 1855189 (D. Or. Apr. 13, 2020). In <u>Rodriguez Diaz</u>, which concerned a noncitizen

18   detained pursuant to 8 U.S.C. § 1226(a) and whether "continued detention was unconstitutional

19   because under the Due Process Clause of the Fifth Amendment, he is entitled to a second bond

20   hearing at which the government bears the burden of proof by clear and convincing evidence,"

21   the panel majority "assume[d] without deciding" that the <u>Mathews</u> test applied, noting that the

22   Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal

23   proceedings," and finding "*Mathews* remains a flexible test that can and must account for the

24   heightened governmental interest in the immigration detention context." <u>Rodriguez Diaz</u>, 53

25   F.4th at 1193, 1206. Similarly, the dissent "agree[d] that the test developed in *Mathews v.*

26   *Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is the appropriate legal framework

27   to determine whether there was a due process violation." <u>Rodriguez Diaz</u>, 53 F.4th at 1219

28   (Wardlaw, J., dissenting). <u>See also</u> <u>Black v. Decker</u>, 103 F.4th 133, 147 (2d Cir. 2024)

1  ("conclud[ing] that due process challenges to prolonged detention under section 1226(c) should

2  also be reviewed under *Mathews*"); Guerrero-Sanchez v. Warden York Cnty. Prison, 905 F.3d

3  208, 225 (3d Cir. 2018) (applying Mathews "[i]n order to identify 'the specific dictates of due

4  process'" in the context of § 1231(a)(6) detentions), abrogated by Arteaga-Martinez, 596 U.S.

5  573. Some courts look to whether the petitioner is requesting an initial bond hearing or a second

6  bond hearing in deciding whether to apply the Mathews test because "[w]hile the Mathews

7  factors may be well-suited to determining whether due process requires a second bond hearing,

8  they are not particularly dispositive of whether prolonged mandatory detention has become

9  unreasonable in a particular case." Djelassi v. ICE Field Office Dir., No. C19-491-RSM, 2020

10  WL 263670, at *2 (W.D. Wash. Jan. 17, 2020) (quoting Banda, 385 F. Supp. 3d at 1118).

11       Given that the parties have addressed the Mathews test in their pleadings, the Ninth

12  Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings,"

13  Rodriguez Diaz, 53 F.4th at 1193, and the fact that Petitioner is seeking a second bond hearing,

14  the Court will apply the Mathews test in addition to addressing the bright-line rule.

15            1.  Bright-Line Rule

16       The First, Second, and Third Circuits have "reject[ed] a bright-line constitutional rule

17  requiring a bond hearing after six months of detention—or after any fixed period of detention—

18  in the context of a Congressional mandate, in the immigration context, to detain." Black, 103

19  F.4th at 150 (citing Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021); German Santos v. Warden

20  Pike Cnty. Corr. Facility, 965 F.3d 203, 211 (3d Cir. 2020)). The Court finds such authority

21  persuasive and declines to adopt a bright-line rule that detention without a bond hearing is

22  presumptively unconstitutional when it exceeds six months.

23            2.  *Mathews* Test

24       In Mathews, the Supreme Court held that "identification of the specific dictates of due

25  process generally requires consideration of three distinct factors":

26            First, the private interest that will be affected by the official action;
            second, the risk of erroneous deprivation of such interest through
27            the procedures used, and the probable value, if any, of additional or
            substitute procedural safeguards; and finally, the Government's
28            interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

### a.  Private Interest

With respect to the first factor, the Court finds that the private interest at issue here is fundamental. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. The Ninth Circuit has held that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.' . . . Rodriguez Diaz has a legitimate and reasonably strong private liberty interest under *Mathews.*" (quoting Singh, 638 F.3d at 1208)).

Based on the foregoing, the Court finds that the first Mathews factor weighs in favor of Petitioner. The Court is cognizant, however, that "it is important not to overstate the strength of [Petitioner]'s showing under the first *Mathews* factor," and that "under the first prong of the *Mathews* analysis, we cannot simply count his months of detention and leave it at that." Rodriguez Diaz, 53 F.4th at 1207, 1208. The Court has considered that Petitioner has received one bond hearing before an IJ and acknowledges his "private interests are further diminished by the fact that he is subject to an order of removal from the United States." Id. at 1208.

### b.  Risk of Erroneous Deprivation

With respect to the second factor, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest and the probable value of additional procedural safeguards. "In evaluating the risk of erroneous deprivation in the context of noncitizen detention, the Ninth Circuit has looked to whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout

detention." <u>Jensen v. Garland</u>, No. 5:21-cv-01195-CAS (AFM), 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023) (citing <u>Rodriguez Diaz</u>, 53 F.4th at 1209–10 (finding a small risk of erroneous deprivation where petitioner was detained under § 1226(a) and thus received numerous procedural protections, including individualized custody determinations and right to seek additional bond hearings)).

On February 15, 2024, Petitioner had an individualized bond hearing before an IJ where the government had the burden of establishing by clear and convincing evidence that Petitioner posed a danger to the community or a flight risk if released. (ECF No. 1 at 2.) The IJ found Petitioner a danger to the community and denied bond. (ECF No. 1 at 2; ECF No. 14 at 198.) Petitioner had the right to appeal that decision to the BIA, and to the extent the agency made errors of law in denying Petitioner's request for release on bond, the decision "would also be subject to judicial review in habeas." <u>Rodriguez Diaz</u>, 53 F.4th at 1210. Like the petitioner in <u>Rodriguez Diaz</u>, the determination to detain Petitioner "was subject to numerous levels of review, each offering [Petitioner] the opportunity to be heard by a neutral decisionmaker. These procedures ensured that the risk of erroneous deprivation would be 'relatively small'" at the time of Petitioner's first bond hearing. <u>Rodriguez Diaz</u>, 53 F.4th at 1210 (quoting <u>Yagman v. Garcetti</u>, 852 F.3d 859, 865 (9th Cir. 2017)).

After the Supreme Court's decision in <u>Arteaga-Martinez</u>, however, Petitioner does not have a statutory right to a bond hearing before an IJ. Applicable DHS regulations "generally require a custody review at the end of the 90-day removal period, a second review by a panel at ICE headquarters after six months of detention, and subsequent annual reviews." <u>Arteaga-Martinez</u>, 596 U.S. at 583; 8 C.F.R. § 241.4. The noncitizen "may submit information in writing in support of his or her release" and "may be assisted by a person of his or her choice[.]" 8 C.F.R. § 241.4(h)(2). The regulations set forth criteria for release[9] and factors[10] to be weighed in

---

[9] "Before making any recommendation or decision to release a detainee, a majority of the Review Panel members, or the Director of the HQPDU in the case of a record review, must conclude that:"

(1) Travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest;
(2) The detainee is presently a non-violent person;
(3) The detainee is likely to remain nonviolent if released;

1    considering detention or release. 8 C.F.R. §§ 241.4(e)–(f). Further, "[n]ot more than once every

2    three months in the interim between annual reviews, the alien may submit a written request to the

3    HQPDU [Headquarters Post-Order Detention Unit] for release consideration based on a proper

4    showing of a material change in circumstances since the last annual review." 8 C.F.R.

5    § 241.4(k)(2)(iii).

6         Although the Supreme Court has rejected the Ninth Circuit's application of the

7    constitutional avoidance canon and its statutory interpretation of § 1231(a)(6), the Court finds

8    Diouf II's discussion of the Mathews factors informative regarding the constitutional issues

9    before this Court. With respect to the second factor, the Ninth Circuit found that "at the 180–day

10   juncture, the DHS regulations are appropriate but not alone sufficient to address the serious

11   constitutional concerns raised by continued detention" because the "regulations do not afford

12   adequate procedural safeguards [as] they do not provide for an in-person hearing, they place the

13

---

14        (4) The detainee is not likely to pose a threat to the community following release;
          (5) The detainee is not likely to violate the conditions of release; and
15        (6) The detainee does not pose a significant flight risk if released.
     8 C.F.R. § 241.4(e).
16   [10] "The following factors should be weighed in considering whether to recommend further detention or
     release of a detainee:"
17        (1) The nature and number of disciplinary infractions or incident reports received when
               incarcerated or while in Service custody;
18        (2) The detainee's criminal conduct and criminal convictions, including consideration of the
               nature and severity of the alien's convictions, sentences imposed and time actually served,
19             probation and criminal parole history, evidence of recidivism, and other criminal history;
          (3) Any available psychiatric and psychological reports pertaining to the detainee's mental health;
20        (4) Evidence of rehabilitation including institutional progress relating to participation in work,
               educational, and vocational programs, where available;
21        (5) Favorable factors, including ties to the United States such as the number of close relatives
               residing here lawfully;
22        (6) Prior immigration violations and history;
          (7) The likelihood that the alien is a significant flight risk or may abscond to avoid removal,
23             including history of escapes, failures to appear for immigration or other proceedings, absence
               without leave from any halfway house or sponsorship program, and other defaults; and
24        (8) Any other information that is probative of whether the alien is likely to—
                   (i) Adjust to life in a community,
25                 (ii) Engage in future acts of violence,
                   (iii) Engage in future criminal activity,
26                 (iv) Pose a danger to the safety of himself or herself or to other persons or to property, or
                   (v) Violate the conditions of his or her release from immigration custody pending removal
27                      from the United States.
     8 C.F.R. § 241.4(f).
28

burden on the alien rather than the government and they do not provide for a decision by a

neutral arbiter such as an immigration judge.[11]" Diouf II, 634 F.3d at 1091 (footnote in original).

The Ninth Circuit subsequently rejected the argument that a noncitizen bearing the burden of

proof at a bond hearing rendered § 1226(a)'s procedures constitutionally deficient. Rodriguez

Diaz, 53 F.4th at 1210–12. However, § 1226(a) and its implementing regulations provide for the

right to seek an additional bond hearing before an immigration judge based on materially

changed circumstances, 8 C.F.R. § 1003.19(e), whereas a noncitizen detained under § 1231(a)

may submit a written request for release consideration to an agency employee based on

materially changed circumstances and a hearing is not required, 8 C.F.R. §§ 241.4(k)(2)(iii),

(h)(1). Thus, in the context of § 1231(a), "the risk of an erroneous deprivation of liberty in the

absence of a *hearing* before a *neutral decisionmaker* is substantial" as the time in detention

lengthens. Diouf II, 634 F.3d at 1092 (emphasis added).

Based on the foregoing, the Court finds that the second Mathews factor weighs in favor

of Petitioner. Again, the Court is cognizant that it should not overstate the strength of Petitioner's

showing here. As noted above, Petitioner already had one bond hearing before an IJ where the

government bore the burden of establishing by clear and convincing evidence detention was

warranted. Additionally, unlike § 1226(c) where no additional procedures are mandated, DHS

regulations provide annual custody reviews and Petitioner may request a new custody review

once every three months based on materially changed circumstances.

### c. Government's Interest

With respect to the third and final factor, the Court recognizes that "the government

clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in

violation of our law'" and "has an obvious interest in 'protecting the public from dangerous

criminal aliens.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 518, 515). The

Ninth Circuit has stated that "[t]hese are interests of the highest order that only increase with the

passage of time," noting that "[t]he longer detention lasts and the longer the challenges to an IJ's

---

[11] Under the regulations, an in-person hearing is permitted, but not required. *See* 8 C.F.R. § 241.4(h)(1).

1  order of removal take, the more resources the government devotes to securing an alien's ultimate

2  removal" and "[t]he risk of a detainee absconding also inevitably escalates as the time for

3  removal becomes more imminent." Rodriguez Diaz, 53 F.4th at 1208.

4      However, it is important to stress that "the governmental issue at stake [here] is the

5  ability to detain Petitioner *without providing him with another bond hearing*, not whether the

6  government may continue to detain him." Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777

7  (N.D. Cal. 2019) (emphasis in original). See Zerezghi v. U.S. Citizenship & Immigr. Servs., 955

8  F.3d 802, 810 (9th Cir. 2020) (noting that "the question [under the third Mathews factor] is *not*

9  the government's interest in immigration enforcement" "in general" (emphasis added));

10 Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14,

11 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in

12 ensuring that lawfully issued removal orders are promptly executed, the Government's interest in

13 detaining Petitioner without providing an individualized bond hearing is low.").

14     Courts generally have found that the cost of providing a bond hearing is relatively

15 minimal, and there is nothing in the record before this Court demonstrating that providing

16 Petitioner with a bond hearing would be fiscally or administratively burdensome. See Marroquin

17 Ambriz v. Barr, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) (noting in context of a § 1226(a)

18 detention, the parties did not contest "that the cost of conducting a bond hearing, to determine

19 whether the continued detention of Petitioner is justified, is minimal"); Singh v. Barr, 400 F.

20 Supp. 3d 1005, 1021 (S.D. Cal. 2019) (noting in the context of § 1226(a) detention that "[t]he

21 government has not offered any indication that a [ ] bond hearing would have outside effects on

22 its coffers").

23     Accordingly, the third Mathews factor weighs in favor of Petitioner.

24     3.  Conclusion

25     Based on the foregoing, the Court finds that each of the Mathews factors weighs in favor

26 of Petitioner. Accordingly, the Court finds that Petitioner is entitled to a second bond hearing.[12]

27

28 [12] In light of this conclusion, the Court declines to address Petitioner's Eighth Amendment claim.

1    **C. Remedy**

2    Petitioner requests this Court to hold a hearing to determine whether detention is justified

3    and "order Petitioner's release, with appropriate conditions of supervision if necessary, taking

4    into account Petitioner's ability to pay a bond." (ECF No. 1 at 21.) He alternatively requests this

5    Court to order his release within thirty days unless Respondent schedules a hearing before an IJ

6    where "to continue detention, the government must establish by clear and convincing evidence

7    that Petitioner presents a risk of flight or danger, even after consideration of alternatives to

8    detention that could mitigate any risk that Petitioner's release would present." (Id.)

9    "The Court finds, consistent with other post-Jennings cases, that the appropriate remedy

10   is a bond hearing before an immigration judge[.]" Lopez, 631 F. Supp. 3d at 882. See Martinez

11   Leiva v. Becerra, No. 23-cv-02027-CRB, 2023 WL 3688097, at *9 (N.D. Cal. May 26, 2023)

12   ("The Court further concludes that the appropriate remedy here is a bond hearing, and that an IJ,

13   not the Court, should conduct it[.]" (footnote omitted)); Mansoor v. Figueroa, No. 3:17-cv-

14   01695-GPC (NLS), 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is

15   uniquely qualified and situated to make neutral administrative determinations about Petitioner's

16   eligibility for release on bond and/or placement in a supervised release program such as ISAP.").

17   The Court now turns to the burden of proof at the bond hearing and which party should

18   bear such burden. Having "previously applied the canon of constitutional avoidance to interpret

19   . . . immigration provisions—8 U.S.C. §§ 1225(b), 1226(c), and 1231(a)(6)—as providing a

20   statutory right to a bond hearing once detention becomes prolonged," the Ninth Circuit in Singh

21   "concluded that for these hearings to comply with due process, the government had to bear the

22   burden of proving by clear and convincing evidence that the alien poses a flight risk or a danger

23   to the community." Rodriguez Diaz, 53 F.4th at 1196 (citing Singh, 638 F.3d at 1203–05).

24   Although Rodriguez Diaz may have declined to impose the standard articulated in Singh, the

25   panel majority specifically stated that it was not "decid[ing] whether Singh remains good law in

26   any respect following Jennings" and even recognized that Singh was based "on general

27   principles of procedural due process, reasoning that a detained person's liberty interest is

28   substantial." Rodriguez Diaz, 53 F.4th at 1202 n.4, 1199. Additionally, the Ninth Circuit has

1   suggested post-<u>Jennings</u> that <u>Singh</u> remains good law in <u>Martinez v. Clark</u>, which took "no

2   position" on "[w]hether due process requires a bond hearing for aliens detained under

3   § 1226(c)," but did address "the scope of federal court review of those bond determinations" and

4   found with respect to a bond hearing for a noncitizen detained under § 1226(c) that "the BIA

5   properly noted that the government bore the burden to establish by clear and convincing

6   evidence that Martinez is a danger to the community." <u>Martinez</u>, 36 F.4th at 1223, 1231. On

7   remand, and after <u>Rodriguez Diaz</u> was decided, the <u>Martinez</u> panel reconfirmed "that the

8   government bore the burden to establish by clear and convincing evidence that Martinez is a

9   danger to the community" and "that the BIA applied the correct burden of proof." <u>Martinez v.</u>

10  <u>Clark</u>, 124 F.4th 775, 785, 786 (9th Cir. 2024).

11       The Court holds that the government must justify Petitioner's continued confinement

12  under § 1231(a) by clear and convincing evidence that Petitioner is a flight risk or a danger to the

13  community. <u>See</u> <u>Juarez v. Choate</u>, No. 1:24-cv-00419-CNS, 2024 WL 1012912, at *8 (D. Colo.

14  Mar. 8, 2024) (holding that "the government will bear the burden to show by clear and

15  convincing evidence that continued detention is justified" at bond hearing ordered for § 1231(a)

16  detainee); <u>Sanchez-Rivera v. Matuszewski</u>, No. 22-cv-1357-MMA (JLB), 2023 WL 139801, at

17  *7 n.5 (S.D. Cal. Jan. 9, 2023) (following "an overwhelming majority of courts that have held

18  that the government must justify the continued confinement of a non-citizen detainee under

19  § 1226(c) by clear and convincing evidence that the non-citizen is a flight risk or a danger to the

20  community"). In the event Petitioner is determined not to be a danger to the community and not

21  to be so great a flight risk as to require detention without bond, the IJ should consider

22  Petitioner's financial circumstances or alternative conditions of release. <u>See</u> <u>Hernandez</u>, 872 F.3d

23  at 1000 ("Plaintiffs are likely to succeed on their challenge under the Due Process Clause to the

24  government's policy of allowing ICE and IJs to set immigration bond amounts without

25  considering the detainees' financial circumstances or alternative conditions of release."); <u>Black</u>,

26  103 F.4th at 138 (The district court "correctly directed the immigration judge ("IJ"), in setting

27  his bond and establishing appropriate terms for his potential release, to consider his ability to pay

28  and alternative means of assuring appearance.").

1    **D.  Attorney's Fees**

2        Petitioner has requested costs and attorney's fees in this action pursuant to the Equal

3    Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. (ECF No. 1 at 22.) The EAJA provides in

4    pertinent part:

5        Except as otherwise specifically provided by statute, a court shall
         award to a prevailing party other than the United States fees and
6        other expenses, in addition to any costs awarded pursuant to
         subsection (a), incurred by that party in any civil action (other than
7        cases sounding in tort), including proceedings for judicial review
         of agency action, brought by or against the United States in any
8        court having jurisdiction of that action, unless the court finds that
         the position of the United States was substantially justified or that
9        special circumstances make an award unjust.

10       A party seeking an award of fees and other expenses shall, within
         thirty days of final judgment in the action, submit to the court an
11       application for fees and other expenses which shows that the party
         is a prevailing party and is eligible to receive an award under this
12       subsection, and the amount sought, including an itemized
         statement from any attorney or expert witness representing or
13       appearing in behalf of the party stating the actual time expended
         and the rate at which fees and other expenses were computed. The
14       party shall also allege that the position of the United States was not
         substantially justified. Whether or not the position of the United
15       States was substantially justified shall be determined on the basis
         of the record (including the record with respect to the action or
16       failure to act by the agency upon which the civil action is based)
         which is made in the civil action for which fees and other expenses
17       are sought.

18   28 U.S.C. § 2412 (d)(1)(A)–(B). The Court will consider an application from Petitioner

19   requesting and substantiating reasonable fees and costs under the EAJA that is filed within thirty

20   days of the judgment.

21                                    **III.**

22                                   **ORDER**

23       Accordingly, the Court HEREBY ORDERS that:

24   1.  Warden, Mesa Verde Detention Center, is SUBSTITUTED as Respondent in the instant

25       matter.

26   2.  All other named Respondents are TERMINATED.

27   3.  The petition for writ of habeas corpus (ECF No. 1) is GRANTED IN PART and

28       DENIED IN PART. The petition is GRANTED as to Petitioner's first claim for relief

(Fifth Amendment due process) and the request for a bond hearing before an IJ. The petition is DENIED in all other respects.

4.  Petitioner's motion for temporary restraining order (ECF No. 2) is DENIED as MOOT.

5.  Respondent's motion to dismiss (ECF No. 9) is DENIED.

6.  Within **THIRTY (30) days** of the date of service of this order, Respondent shall provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in <u>Singh v. Holder</u>, 638 F.3d 1196 (9th Cir. 2011), and at which

    a.  "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," <u>Singh</u>, 638 F.3d at 1203; and

    b.  the IJ should consider Petitioner's financial circumstances or alternative conditions of release in the event Petitioner is determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond.

7.  A contemporaneous record of the hearing shall be made. <u>Singh</u>, 638 F.3d at 1200, 1208.

8.  In the event the government fails to hold said bond hearing, Petitioner shall be released from detention under appropriate supervision.

9.  The Clerk of Court is DIRECTED to enter judgment in accordance with this order.

IT IS SO ORDERED.

Dated:   **April 21, 2025**             /s/ Erica P. Grosjean
                                        UNITED STATES MAGISTRATE JUDGE